## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

TERESA A. ZEIGLER,                                )
                                                  )
    Plaintiff,                          )
                                                  )
v.                                                )    Case No.      2:11-CV-00088-CAS-NAB
                                                  )
MICHAEL J. ASTRUE,                                )
Commissioner of Social Security,                  )
                                                  )
    Defendant.                          )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Teresa A. Zeigler's ("Zeigler") application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Zeigler alleges disability due to degenerative arthritis (Tr. 163.), bone spurs (Tr. 163.), degenerative disc and joint disease (Tr. 37.), depression (Tr. 45.), diabetes (Tr. 163.), obstructive sleep apnea (Tr. 13, 46.), severe allergies and asthma (Tr. 46.), and interstitial cystitis (Tr. 50.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned recommends that the Administrative Law Judge's ("ALJ") decision be affirmed.

## I. PROCEDURAL HISTORY

On January 25, 2010, Zeigler protectively filed a Title II application for a period of disability, seeking DIB. (Tr. 159.) She alleged an onset date of January 1, 2009. (Tr. 159.) The Social Security Administration ("SSA") denied Zeigler's claim on June 25, 2010, and she filed a timely request for hearing before an ALJ. (Tr. 63.) The SSA granted Zeigler's request for hearing

and the hearing took place on January 6, 2011. (Tr. 13, 75.) The ALJ issued a written decision on January 27, 2011, upholding the denial of benefits. (Tr. 13-22.) On March 31, 2011, Zeigler filed a request for review of the ALJ's hearing decision. (Tr. 9.) The Appeals Council declined to review the decision after considering new medical evidence presented by Zeigler. (Tr. 2-5.) The ALJ's decision thus stands as the final decision of the Commissioner. Zeigler filed this appeal on November 16, 2011.

## II. DECISION OF THE ALJ

The ALJ found that Zeigler met the insured status requirements through December 31, 2014. (Tr. 15.) The ALJ found that Zeigler has not engaged in substantial gainful activity after her disability onset date of January 1, 2009. (Tr. 15.) The ALJ found Zeigler's alleged depression, anxiety, and bladder disorder to be either not medically determinable and/or a non-severe health impairment. (Tr. 15.) The ALJ did find, however, that she had several severe impairments of obesity, hypertension, sleep apnea adequately compensated by CPAP therapy, Chronic Obstructive Pulmonary Disease[1] ("COPD") with asthma, seasonal allergies, diabetes, back pain of unknown etiology, and dysfunctional urine bleeding possibly requiring definitive surgical correction. (Tr. 17.)

Although severe, the ALJ did not find Zeigler's impairments to be severe enough to meet or medically equal, either singly or in combination, one of the impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17.) While the ALJ determined that Zeigler's past relevant work as a laboratory assistant exceeded her residual functional capacity ("RFC"), he concluded, considering her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Zeigler can perform. (Tr. 17.)

[1] General term used for those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied. *Steadman's Medical Dictionary* 512 (27th ed. 2000).

# III. ADMINISTRATIVE RECORD

## A. Hearing Testimony

The ALJ heard testimony from Zeigler, who was represented by counsel. (Tr. 29-56.)

### 1. Claimant's Testimony

Zeigler testified that she was forty-eight (48) years old. (Tr. 31.) She completed the twelfth grade and has no vocational or other "on-the-job" type training. (Tr. 31.)

Zeigler testified that her job history "basically [includes] two types of jobs," having worked as a laboratory assistant for twenty-six (26) years and, more recently, as a research interviewer at Maritz Research. (Tr. 31, 34, 38.) At the laboratory, Zeigler worked eight (8) hour shifts, throughout which she was required to stand. (Tr. 33-34.) During these shifts, she sorted and prepared specimens for technicians, loaded machinery with reagents and water, and performed clerical tasks, such as filing worksheets and answering phones. (Tr. 32.) These tasks required her to carry equipment weighing as much as ten (10) pounds. (Tr. 32-33.)

Zeigler testified that near the end of her career at the laboratory, she was suffering from reduced grip strength, in addition to pain, cramping, and numbness in her hands, as a result of arthritis. (Tr. 34.) She also complains that she was beginning to have soreness and swelling in her back, knees, and feet. (Tr. 34.) Despite this, she continued to work full-time, requiring only to sit every few hours during her breaks. (Tr. 34-35.) Zeigler was laid off during a "reduction in [the work] force." (Tr. 38.)

In February of 2008, Zeigler was hired by Maritz Research ("Maritz"). (Tr. 38.) Maritz employs Zeigler as a "research interviewer." (Tr. 39.) In this capacity, she conducts phone surveys with her clients' previous customers. (Tr. 38.) She is permitted to sit at a desk, and, prior

to her alleged disability onset date, January 1, 2009, she worked thirty-five (35) to forty (40) hours per week. (Tr. 39.)

Following January 1, 2009, Zeigler reduced her schedule to twenty-eight (28) hours per week. (Tr. 39.) Despite this reduction, Zeigler testified that she was "rarely able to work" all twenty-eight (28) hours because of medical issues. (Tr. 54.) She testified that working on her computer caused her hands to become tired and painful. (Tr. 39.) Sitting for fifteen (15) minutes caused her back to spasm and her legs and knees to swell, causing discomfort. (Tr. 39-40, 44.) To relieve this pain, she would stand up and move around for up to five minutes. (Tr. 41.) She testified, however, that walking as little as a block could trigger pain in her knees and hip such that she could no longer stand. (Tr. 44.)

In June 2010, Zeigler was diagnosed with interstitial cystitis.[2] (Tr. 50.) She testified that because of this, she would leave her desk between two (2) and six (6) times an hour to use the restroom. (Tr. 51.) She testified that this, along with the necessity to stand because of her back pain, hampers her ability work because she cannot meet her employer-required quota for phone calls per hour. (Tr. 40, 52.)

Zeigler alleges that depression, as well as allergies and asthma; limit her ability to leave the home. (Tr. 45-46.) She can only perform household chores for ten (10) to fifteen (15) minutes before she must take a break. (Tr. 48-50.) She was recently diagnosed with "a mild case of diabetes." (Tr. 46.)

## B. Medical Records

On February 25, 2008 and April 14, 2008, Zeigler sought treatment at the Northeast Regional Specialty Group where she complained of various respiratory related ailments. (Tr.

---

[2] A chronic inflammatory condition of unknown etiology involving the epithelium and muscularis of the bladder, resulting in reduced bladder capacity, pain relieved by voiding, and severe bladder irritative symptoms. *Stedman's Medical Dictionary* 450 (27th ed. 2000).

230-42.) During this time, she was diagnosed with obstructive sleep apnea and seasonal allergies. (Tr. 234, 236, 242.) Najma Usmani, M.D., treated Zeigler with nasal spray, an inhaler, a CPAP[3] machine, and sleep medication. (Tr. 233, 237.)

Between May 16, 2008 and February 13, 2010, Zeigler sought treatment from the Green Hills Clinic complaining of difficulty breathing, coughing, dizziness, nausea, fatigue, swelling ankles, shoulder pain, and headaches. (Tr. 271-89.) She was treated by Robert Parsonson, D.O., with various medications, including Prednisone. (Tr. 271-89.) In September of 2010, Dr. Parsonson opined that Zeigler was disabled, required ongoing treatment, and was unable to work at that time. (Tr. 315.)

Between February 23, 2009 and March 29, 2010, Melanie Grgurich, D.O. treated Zeigler at Northern Regional Medical Center. (Tr. 243-49.) Zeigler complained of several ailments, including difficulty breathing and speaking, sinus congestion, and shoulder pain. (Tr. 243-49.) Dr. Grgurich successfully treated these ailments with various medications. (Tr. 243-49.) On February 15, 2011, Dr. Grgurich opined that Zeigler had been experiencing low back pain with radiation down her left leg for three months. (Tr. 318.) She had difficulty standing for periods longer than fifteen (15) minutes or lifting anything over ten (10) pounds. (Tr. 318.) Dr. Grgurich noted that Zeigler was unable to perform her current and usual work at that time. (Tr. 318.)

Between October 29, 2009 and May 11, 2010, Ralph Boling, D.O., treated Zeigler at the Gutensohn Clinic for uterine bleeding. (Tr. 250.) Dr. Boling diagnosed her with a fibroid uterus with polycystic ovaries. (Tr. 250.) Dr. Boling placed Zeigler on hormone therapy, but this

---

[3] Continuous positive airway pressure (CPAP), a technique of respiratory therapy, in either spontaneously breathing or mechanically ventilated patients, in which airway pressure is maintained above atmospheric pressure throughout the respiratory cycle by pressurization of the ventilator circuit. *Steadman's Medical Dictionary* 1442 (27th ed. 2000).

treatment was only minimally effective. (Tr. 250.) Because of the medication's minimal effectiveness, Dr. Boling recommended a hysterectomy. (Tr. 250.)

On November 26, 2010, Joseph Markiewicz at First Health, LLC treated Zeigler for a shoulder and lower back pain. (Tr. 304.) He diagnosed her with lumbar facet syndrome secondary to lumbar degenerative changes with associated myofascitis[4] along with a cervicothoracic[5] sprain or strain, both complicated by intersegmental joint dysfunction in the cervical, thoracic, lumbar, and sacroiliac joints. (Tr. 306.) He noted that Zeigler felt immediate relief while still in his office. (Tr. 306.) He recommended low force metered adjustments to the cervical, thoracic, lumbar, and pelvic regions for two (2) weeks followed by a re-evaluation. (Tr. 307.)

On March 15, 2011 Robert Sparks, D.O., evaluated Zeigler to determine impairment or disability. (Tr. 319-21.) Relying on both a physical examination and Zeigler's past medical records, Dr. Sparks determined Zeigler suffered from bulging discs of the lumbar spine, facet arthropathy, nerve impingement of the left L3-4 nerve root, allergies, degenerative disc disease, fibromyalgia[6], sleep apnea, non-insulin diabetes mellitus, migraine caphaligia, obesity, depression, hypertension, hypertriglycardemia[7], hypercholesterolemia, asthma, bone spurs of the feet, and a history of interstitial cystitis. (Tr. 319.) He believed Zeigler was unable to work and was "absolutely disabled" at that time. (Tr. 321.) Dr. Sparks stated, "should [Zeigler] seek proper treatment for these issues and if that treatment were successful then it is possible in the future that she might be able to be gainfully employed." (Tr. 321.)

---

[4] Induration of a muscle through an interstitial growth of fibrous tissue. *Stedman's Medical Dictionary* 1173 (27th ed. 2000).

[5] Relating to: The neck and thorax, or the transition between the neck and thorax. *Stedman's Medical Dictionary* 324 (27th ed. 2000).

[6] A syndrome of chronic pain of musculoskeletal origin but uncertain cause. *Stedman's Medical Dictionary* 671 (27th ed. 2000).

[7] Elevated triglyceride levels in the blood. *Stedman's Medical Dictionary* 857 (27th ed. 2000).

# IV. STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[8] 20 C.F.R. § 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual

---

[8] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

Functional Capacity ("RFC").  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008).  *See also*

*Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R.

§ 404.1545(a), and includes an assessment of physical abilities and mental impairments.  20

C.F.R. § 404.1545(b)-(e).  The ALJ will review a claimant's RFC and the physical and mental

demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).  If it is found

that the claimant can still perform past relevant work, the claimant will not be found to be

disabled.  *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work

experience to see if the claimant can make an adjustment to other work.  20 C.F.R.

§ 404.1520(a)(4)(v).  If it is found that the claimant cannot make an adjustment to other work,

the claimant will be found to be disabled.  *Id*  At this step, the Commissioner bears the burden to

"prove, first that the claimant retains the RFC to perform other kinds of work, and, second that

other work exists in substantial numbers in the national economy that the claimant is able to

perform."  *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).  The

Commissioner must prove this by substantial evidence.  *Warner v. Heckler*, 722 F.2d 428, 431

(8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process,

the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove

disability, however, remains with the claimant."  *Id.  See also Harris v. Barnhart*, 356 F.3d 926,

931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported

by "substantial evidence" in the record as a whole.  *See Smith v. Shalala*, 31 F.3d 715, 717 (8th

Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The factual findings of the ALJ are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. *Id.* The absence of objective medical evidence is just one factor to be considered

in evaluating the claimant's credibility and complaints. *Id.* The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

 (1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions

*Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guillams*, 393 F.3d at 802; *Masterson*, 363 F.3d at 738. "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id.* (citing *Butler v. Sec'y of Health & Human Servs.*, 850 F.2d 425, 429 (8th Cir. 1988)). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). *See also Steed*, 524 F.3d at 876 (citing *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988); *Millbrook v. Heckler*, 780 F.2d 1371, 1374 (8th Cir. 1985).

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a claimant's limitations, but only those which he finds credible. *Goff*, 421 F.3d at 794 ("[T]he ALJ properly

included only those limitations supported by the record as a whole in the hypothetical"); *Rautio*, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the claimant's subjective complaints of pain for legally sufficient reasons. *Baker v. Barnhart*, 457 F.3d 882, 894-95 (8th Cir. 2006); *Carlock v. Sullivan*, 902 F.2d 1341, 1343 (8th Cir. 1990); *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir. 1989).

## V. DISCUSSION

Zeigler alleges three points of error on appeal. She contends the decision of the ALJ should be reversed because of the ALJ's failure to properly consider the opinions of Zeigler's treating or examining physicians, the Appeals Council's failure to consider additionally submitted evidence, and the ALJ's failure to obtain evidence from a vocational expert ("VE"). Because the ALJ's decision was supported by substantial evidence, the decision should be affirmed.

### A.     ALJ's Failure to Give Controlling Weight to the Opinion of Dr. Parsonson, Zeigler's Treating Physician.

Zeigler asserts that the ALJ should have adopted the opinions of her treating physicians, Dr. Parsonson, Dr. Grgurich, and Dr. Sparks. At the time of the ALJ decision, Dr. Parsonson's and Dr. Grgurich's treatment records were available to the ALJ. (*See* Tr. 25-26.) However, only Dr. Parsonson's opinion was available to the ALJ because the other opinions had not been given at that time. (*See* Tr. 3, 23-26.) The opinions of Dr. Grgurich and Dr. Sparks were first made available on appeal. (*See* Tr. 3.)

Therefore, in assessing whether the ALJ erred in failing to give controlling weight to Zeigler's treating physicians, we examine the ALJ's decision in light of Dr. Parsonson's opinion. In performing this examination, the Court must conclude whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Substantial evidence is derived from credibility determinations; the education, background, work history, and age of the claimant; medical evidence from the claimant's treating physicians; subjective complaints about pain; corroboration of third parties; VE testimony; and consulting physicians. *Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937.

In this instance, the evidence suggests that the ALJ actually did accept Dr. Parsonson's assessments of Zeigler's ailments, despite not accepting his conclusions as to whether or not Zeigler was "disabled," stating "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 21.) However, the ALJ found Zeigler's testimony regarding "the intensity, persistence and limiting effects of [her] symptoms…not credible to the extent [that it was] inconsistent with [Zeigler's] RFC." (*See* Tr. 21.)

In making this determination, the ALJ looked to the record indicating that Zeigler's testimony was not compatible with her alleged limitations. "Although the claimant testified

reported [sic] that her increasing health impairments and symptoms began in late 2007/2008 precluding her from perform[ing] her prior jobs as [a] laboratory assistant…she reports that she was separate[d] from this job secondary to a management decision to down size its work force," and not her inability to work. (Tr. 20.)

Additionally, at her new position, even after Zeigler requested Dr. Grgurich to assess claimant as totally disabled, Zeigler continued to work part-time. (Tr. 21.) Further, none of the doctors found the impairments totally disabling for a period of twelve (12) months. (Tr. 20-21.) In fact, the Dr. Grgurich acknowledged she was still attempting different methods of treatment which Zeigler had not exhausted. (Tr. 318.) *See also Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'").

As such, after discrediting Zeigler's testimony, and considering the conservative nature of her treatment, her ability to continue working despite her alleged disability, her limitations, the effect of treatment given, and the availability of unsought treatment, the ALJ's decision is supported by substantial evidence, such that "a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Therefore, controlling weight need not be given to Parsonson's opinion to the extent that it is inconsistent with the record as a whole.

### B. Appeals Council's Failure to Consider Additionally Submitted Evidence.

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the

Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)).

Zeigler alleges that the Appeals counsel failed to consider this supplemental evidence stating, "[t]he Appeals Council denial does not make any reference to the additional evidence nor is it included in the administrative record." (Brief in Support of Pl.'s Compl. 14.) First, this allegation is not supported by the record, as the Appeals Council specifically stated, "[w]e also looked at the additional evidence you submitted which included the following: Robert Parsonson's September 4, 2010, opinion…Melanie Grgurich's February 15, 2011, opinion; Robert Spark's March 23, 2011, opinion…" (Tr. 3.)

After examining this additional information, the Appeals Council denied the request for review. (Tr. 2.) "In these circumstances, we do not evaluate the Appeals Council's decision to deny review." *Cunningham v. Apfel,* 222 F.3d 496, 500 (8th Cir. 2000). The appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, No. 11-3041, 2012 WL 3168495, at *5 (8th Cir. Aug. 7, 2012) (citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622).

The crux of Zeigler's additional evidence argument turns on the fact that these additional doctors' opinions state that Zeigler is "disabled" and "unable to perform work" at this time. (*See* Tr. 317-18, 321.) Zeigler contends that the ALJ erred in failing to give these opinions controlling

weight. However, [a] medical source opinion that an applicant is 'disabled' or 'unable to work,' involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight. *Ellis*, 392 F.3d at 994; *see also* 20 C.F.R. § 404.1527(e).

Instead, if given controlling weight, the ALJ defers to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. 404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). Therefore, after disregarding the doctors' opinions as to "disability," the remaining information contained in the opinions is duplicative of both Parsonson's and Grgurich's medical records which were already available and considered by the ALJ.

Additionally, Dr. Sparks' opinion stemmed from a one-time examination to determine whether or not Zeigler was disabled. Ordinarily, the opinion of physicians that examine a claimant once…do not constitute substantial evidence on the record as a whole. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2009) (citing *Kelley v. Callahan*, 133 F.3d 583, 509 (8th Cir. 1998). Further, his opinion is partially built upon the past medical records of Dr. Parsonson and Dr. Grgurich, and, therefore, not entirely independent corroborative evidence. (*See* Tr. 310-21.)

Moreover, Dr. Sparks indicated with certainty that "a lot of these issues could be appropriately treated," but have not been. (Tr. 321.) He stated that "should [Zeigler] seek proper treatment for these issues and if that treatment were successful then it is possible in the future that she might be able to be gainfully employed." (Tr. 321.)

Because the Court does not give controlling weight to physicians' opinions regarding whether a claimant is 'disabled,', and further the opinions are duplicative of evidence already

before the ALJ, this evidence is not sufficient to overrule the decision of the ALJ. Even if these opinions did cause the Court to find Zeigler 'disabled' by a preponderance of the evidence, the decision must still be affirmed because substantial evidence supports the ALJ's decision. *See Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).

### C.    Failure to Obtain Evidence from a Vocational Expert.

Zeigler alleges error by the ALJ for failing to receive evidence from a VE during the fifth step of the sequential evaluation process. An ALJ commits legal error if the ALJ fails to correctly follow the sequential evaluation process. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). At step five in the process, the ALJ must determine if the claimant can make an adjustment to other work. *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(v)).

"Where the claimant suffers from a nonexertional impairment such as pain, the ALJ must obtain the opinion of a vocational expert instead of relying on the Medical–Vocational Guidelines." *Id.* at 872 (citing *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir.2006)). However, where a claimant does not suffer from nonexertional impairments or where such impairments "do not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities," the Commissioner may conduct this inquiry by consulting the Medical–Vocational Guidelines (the "Grids"). *Id.* at 871-72 (citing Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir.2005) (quotation omitted)).

If the ALJ credits a claimant's subjective complaints of pain and limitation, the ALJ is required to obtain the opinion of a VE. *See Id.* (citing Cox, 495 F.3d at 620). If, on the other hand, the ALJ discredits a claimant's subjective complaints and concludes that she possessed the RFC to perform the full range of sedentary work activity, the ALJ may resolve a claim by reference to the Grids. *See Id.* at 872.

Here, the ALJ discredited Zeigler's nonexertional impairments as either nonexistent or such that they do not diminish or significantly limit Zeigler's RFC to perform the full range of guideline-listed activities. The ALJ specifically stated, "[I am] not convinced that the claimant's selection to limit herself to performing part-time work activities is motivated by medical considerations." (Tr. 21.) "After careful consideration of the evidence, [I find] that the…claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with [Zeigler's] RFC assessment." (Tr. 21.)

SSR 96-7p requires an ALJ, when determining the credibility of a claimant's statements, to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. As discussed in the previous sections with regard to substantial evidence, the record is clear that the ALJ examined the claimant's testimony in light of the record as a whole. (*See* Tr. 15-22.)

Because the ALJ has discounted Zeigler's nonexertional impairments, he was not obligated to obtain evidence from a VE if he instead consulted the Medical-Vocational Guidelines. Here, the ALJ consulted these guidelines, concluding that based on Zeigler's age, education, and work experience, Medical-Vocational Rule 201.21 would direct a finding of "not disabled" if not for her additional limitations involving extreme temperatures and/or atmospheric pollutants. (Tr. 22.)

He then consulted other social security regulations, SSR 83-12 and SSR 83-14, determining "the need to avoid frequent contact with petroleum-based solvents does not

significantly compromise the full range of sedentary work…[and] the vast majority [of] sedentary occupations are performed indoors, so outside environment limitations…are not significant." Further SSR 96-6p states that "the need to avoid all exposure to extreme [temperatures]…[and] exposure to toxic, caustic chemical would not result in significant erosion of the sedentary occupational base. (Tr. 22.) SSR 96-9p continues, "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." SSR 96-9p.

Because the ALJ found by substantial evidence that Zeigler's pain did not substantially limit her ability to perform the full range of guideline-listed activities, a VE was not required, and the ALJ's finding of "not disabled" is affirmed.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the ALJ's decision that Zeigler is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in her Complaint and Brief in Support be **DENIED** and that judgment be entered in favor of Defendant.

The parties are advised that they have fourteen (14) days to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 6th day of March, 2013.

/s/Nannette A. Baker_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE